RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0159P (6th Cir.)
File Name: 01a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DAVID M. JINKS and
ELIZABETH M. GREEN,
      *Plaintiffs-Appellants,*

       *v.*

ALLIEDSIGNAL, INC.,
      *Defendant-Appellee.*

No. 00-5160

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 98-00441—R. Allan Edgar, Chief District Judge.

Submitted: May 4, 2001

Decided and Filed: May 14, 2001

Before: SILER and GILMAN, Circuit Judges; DUGGAN,
District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** Anita B. Hardeman, Harry F. Burnette,
BURNETTE, DOBSON & HARDEMAN, Chattanooga,

---

[*]The Honorable Patrick J. Duggan, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

Tennessee, for Appellants.  William N. Ozier, Michael S. Moschel, BASS, BERRY & SIMS, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge.  David M. Jinks and Elizabeth M. Green brought suit against their former employer, AlliedSignal Inc., alleging that they were wrongfully terminated because of their age in violation of the federal Age Discrimination in Employment Act and the Tennessee Human Rights Act.  Following the district court's grant of summary judgment in favor of AlliedSignal, Jinks and Green filed a motion for relief from judgment pursuant to Rule 60(b)(1) and (6) of the Federal Rules of Civil Procedure.  The district court denied relief.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

### I.  BACKGROUND

#### A.  Factual background

AlliedSignal produces automotive brake parts at its manufacturing plant in Cleveland, Tennessee.  In May of 1981, Jinks was hired by AlliedSignal's predecessor to be a time-study analyst.  He served in that position for ten years before becoming a process engineer.  In August of 1996, he was promoted to the position of manufacturing leader in AlliedSignal's drum-brake production operation. This was his first managerial position at Allied, and he was responsible for supervising 30 to 45 hourly employees.

Green was the Cleveland plant's most senior employee. AlliedSignal's predecessor hired her as an accounts-payable clerk in 1964.  In August of 1993, she was made an associate accountant responsible for processing the hourly workforce payroll.  She was the only associate accountant in the department.

that a single, isolated comment or belief that one member of management held several years prior to Green's layoff is sufficient direct evidence[,] . . . especially when viewing the circumstances of the reduction in force and elimination of many of the duties of Green's position with Allied."  We agree, and thus conclude that the district court did not abuse its discretion when it denied their motion to correct the clerical error.

Moreover, the district court determined that the new arguments presented in Jinks's and Green's Rule 60(b) motion lacked merit.  In its review of Jinks's and Green's statistical argument concerning the ages of those employees selected for the RIF, the court found that their interpretation of this data "was not supported by any facts in the record." The court went on to reject the claim that Jinks's prior supervisory experience established that AlliedSignal's proffered reason for eliminating his position was pretextual, because "Jinks presents no evidence that Allied ever considered such experience as relevant supervisory experience, that Allied was aware of such experience, or that such experience was comparable or better than that of retained employees."  Their belated arguments would thus have failed to establish a prima facie case of age discrimination even if they had been timely raised.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

relief. As noted above, they had known about the age-factor comment allegedly made to Kirschmann for over a year, yet failed to exercise due diligence in obtaining his sworn statement. Moreover, Jinks and Green cannot show that substantial justice demands that the court consider Kirschman's affidavit. Samulaski, the AlliedSignal manager who allegedly made the comment to Kirschmann, was never Jinks's or Green's supervisor. Furthermore, the purported remark was not directed at Jinks or Green and therefore had questionable probative value. Jinks and Green are thus unable to demonstrate that "principles of equity mandate relief." *Olle*, 910 F.2d at 365.

Jinks and Green also claim that Rule 60(b) is applicable because the district court allegedly failed to consider their revised interpretation of statistical evidence concerning those considered for layoff or Jinks's prior supervisory experience. Rule 60(b), however, does not provide relief simply because litigants belatedly present new facts or arguments after the district court has made its final ruling. *See Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24, 29 (1st Cir. 1980) (holding that Mas Marques's affidavit filed ten days after the entry of summary judgment provided insufficient grounds to set aside the judgment, where no explanation was given for his failure to present the affidavit or its contents earlier, and no claim was made that further facts became known to him only after judgment had been entered).

Finally, Jinks and Green argue that the district court abused its discretion by not granting them leave to correct a clerical error in their response to AlliedSignal's motion for summary judgment. Their answer had misstated the page in Green's deposition referencing a remark by AlliedSignal Human Resources Manager Noe Gayton that he thought of her as an "old woman." Jinks and Green overlook the fact, however, that the district court's order specifically considered this evidence, even though it could not be located in the record. The court concluded that "[e]ven if this evidence was in the record before the Court, it would unlikely provide sufficient direct evidence of age discrimination. . . . [T]he court doubts

In October of 1997, AlliedSignal announced its third-quarter earnings, noting the poor performance of its automotive-products group and its plans to take aggressive action to reduce costs associated with that group. As a result, the salaried workforce at the Cleveland plant was reduced as part of a group-wide reduction-in-force ("RIF"). Eleven salaried positions were eliminated at the Cleveland plant.

AlliedSignal reduced the number of drum-manufacturing leader positions from five to three. Jinks was one of the two drum-manufacturing leaders selected for layoff because he had less supervisory experience than the retained manufacturing leaders. Moreover, immediately prior to his layoff, his performance evaluation noted that he needed improvement in his teamwork, attitude, and performance. Jinks was 45 years old when he was laid off.

The RIF also affected the accounting department. Green's position was abolished because AlliedSignal had decided to implement a new payroll system that would have eliminated half of Green's responsibilities. Her remaining duties were reassigned to other personnel within the department. Green was 57 years old at the time.

Both Jinks and Green were invited to apply for position openings as they became available at the Cleveland plant following their layoffs. In August of 1998, Jinks was offered his old position back as a drum-manufacturing leader with the same salary and benefits that he had previously enjoyed. Jinks, however, had already taken a new job in Texas by that time. Because a return to AlliedSignal would have required him to incur significant moving expenses, he asked AlliedSignal to pay these costs. When AlliedSignal refused to pay his moving expenses, Jinks declined the offer.

Green was also informed of job openings within the accounting department. Although she was interviewed for an accountant position, AlliedSignal hired someone with greater accounting experience. Green had only worked as an associate accountant, not a full-charge accountant. In January of 1998, she interviewed for, and was offered, an accounts-

payable clerk position. Because the position's annual salary was between $23,000 to $24,000, and she had previously been earning in the low-$30,000 range, she rejected the offer.

## B.  Procedural background

On November 12, 1998, Jinks and Green filed suit in the Chancery Court of Bradley County, Tennessee pursuant to the federal Age Discrimination in Employment Act (29 U.S.C. §§ 621, 623) and the Tennessee Human Rights Act (Tenn. Code Ann. § 4-21-101).  The complaint alleged that AlliedSignal had violated federal and state fair-employment laws by using age as a factor in its decision to eliminate their positions.  Jinks further claimed that AlliedSignal violated Tennessee law by retaliating against him for filing his discrimination charge. *See* Tenn. Code Ann. § 4-21-301. On the basis of the federal question presented and the diversity of the parties' citizenship, AlliedSignal subsequently removed the lawsuit to the United States District Court for the Eastern District of Tennessee.

AlliedSignal then filed its answer, denying the substantive allegations of Jinks's and Green's complaint and asserting a counterclaim against Jinks for conversion and unjust enrichment, based upon Jinks's refusal to return severance pay that he had mistakenly received. On November 12, 1999, AlliedSignal moved for summary judgment on all claims. In granting the motion, the district court held that Jinks and Green had failed to establish a prima facie case of age discrimination and were unable to raise a genuine issue of material fact showing that AlliedSignal's proffered reasons for their termination were a pretext designed to mask age discrimination.  The district court also concluded that Jinks could show no causal connection between AlliedSignal's demand for repayment of the severance pay and his filing of the age-discrimination charge.  Accordingly, the case was dismissed with prejudice on December 16, 1999.

Six days later, Jinks and Green filed their motion for relief from judgment pursuant to Rule 60(b)(1) and (6) of the Federal Rules of Civil Procedure.  The motion raised new

cases requesting relief from *default* judgment, these factors are not controlling "where relief is requested from a grant of *summary judgment*, a decision based on the merits of an action") (emphasis added); *contra Amberg v. Federal Deposit Ins. Corp.*, 934 F.2d 681, 685-86 (5th Cir. 1991) (stating that "[t]he Federal Rules are diametrically opposed to a tyranny of technicality and endeavor to decide cases on the merits" when "sound judicial administration and fairness" would counsel against default judgment).  Consequently, we conclude that the district court did not abuse its discretion in declining to grant Jinks's and Green's motion to vacate judgment pursuant to Rule 60(b)(1).

In the alternative, Jinks and Green argue that the summary-judgment ruling should be set aside under Rule 60(b)(6), which permits the court to relieve a party from final judgment for "any other reason justifying relief from the operation of judgment."  Rule 60(b)(6), however, applies only in exceptional and extraordinary circumstances which are not addressed by the first five subsections of Rule 60(b). *See Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (remanding the case to the district court for the limited purpose of determining whether the party could show any extraordinary circumstances that would justify relief from judgment).  Moreover, the exceptional circumstances under Rule 60(b)(6) require "unusual and extreme situations where principles of equity *mandate* relief." *Id.* (emphasis in original).

Jinks and Green contend that Rule 60(b)(6) is applicable because their circumstances fall outside the first five subsections of the rule.  They claim that the late submission of Kirschmann's affidavit is akin to the "newly discovered evidence" provision of Rule 60(b)(2), because even though they were *aware* of the evidence, they were unable to *present* it to the court.  On this basis, they contend that their predicament falls within the protection of Rule 60(b)(6).

Their motion fails to show, however, the existence of any exceptional or extraordinary circumstance that would justify

whether the "neglect" was excusable involves an equitable determination that takes into account (1) the danger of prejudice to the other party, (2) the length of delay, (3) its potential impact on judicial proceedings, (4) the reason for the delay, and (5) whether the movant acted in good faith. *See id.* at 395.

Significantly, *Pioneer* focused entirely on "out-of-time" filings. Jinks's and Green's appeal is not based on an "out-of-time" filing. Rather, they failed to raise issues in their response to AlliedSignal's summary-judgment motion that they now wish the court to consider after-the-fact. If their broad reading of *Pioneer* is adopted, a district court would be forced to address claims of "excusable neglect" each time a party forgets to raise a particular legal theory or defense at any stage in the proceeding, or neglects to file evidence that would provide a factual basis for a claim. Such a rule would cause great uncertainty and delay in the disposition of cases. *See Barrier v. Beaver*, 712 F.2d 231, 234 (6th Cir. 1983) ("The rule attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done."); *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000) ("The ground for setting aside a judgment under Rule 60(b) must be something that could not have been used to obtain a reversal by means of a direct appeal."); *Greenwood Explorations, Ltd. v. Merit Gas & Oil Corp., Inc.*, 837 F.2d 423, 427 (10th Cir. 1988) (noting that "[t]he diligent party should be protected from delay and uncertainty. . . . A Rule 60(b) motion is not to be used as a substitute for appeal.") (internal citation omitted).

More appropriately, *Pioneer* stands for the proposition that a district court should consider the five factors enumerated above in cases where procedural default has prevented the court from considering the true merits of a party's claim. *See, e.g., Rice v. Consolidated Rail Corp.*, No. 94-3936, 1995 WL 570911, *6 (6th Cir. Sept. 27, 1995) (unpublished table decision) (noting that while "a district court must look to the presence of prejudice to the plaintiff, the existence of a meritorious defense, and the culpability of the conduct" in

facts and arguments not presented to the district court on summary judgment. In support of their motion, they filed the affidavit of Paul Kirschmann, a 44-year-old AlliedSignal employee whose position had also been eliminated in AlliedSignal's RIF. His affidavit alleged that an AlliedSignal manager, Tom Samulaski, informed Kirschmann at his exit interview that age was a factor used in the company's RIF decision-making process.

Jinks and Green claimed that Kirschmann's "recent illness" had prevented them from timely filing the affidavit with their response to AlliedSignal's motion for summary judgment. Their motion also (1) offered a new interpretation of statistical evidence concerning the group of individuals considered for layoff, (2) asserted that the district court had improperly disregarded Jinks's prior supervisory experience, which was in the record but not referred to in their response to AlliedSignal's summary-judgment motion, and (3) sought leave to correct a clerical error in their summary-judgment answer, which had misstated the page in Green's deposition referencing Human Resources Manager Noe Gatyon's remark that she was an "old woman."

In denying the Rule 60(b) motion, the district court concluded that Jinks and Green had failed to establish sufficient grounds to justify relief under the rule. The court also stated in a footnote that even if it were to consider Kirschmann's affidavit, Gayton's "old woman" comment, or the argument concerning Jinks's supervisory experience, this evidence only went to the issue of pretext. Finally, the district court held that the statistical-evidence argument was not supported by any facts in the record. Jinks and Green, per the district court, had still failed to establish the requisite elements for a prima facie case of age discrimination. Jinks's and Green's appeal is based solely on the district court's denial of their Rule 60(b) motion.

## II. ANALYSIS

### A.  Standard of review

The district court's denial of a Rule 60(b) motion for relief from judgment will not be set aside unless we find an abuse of discretion. *See Thompson v. American Home Assur. Co.*, 95 F.3d 429, 432-33 (6th Cir. 1996). An abuse of discretion will be found only where there is a "definite and firm conviction that the trial court committed a clear error of judgment." *Davis v. Jellico Comty. Hosp. Inc.*, 912 F.2d 129, 133 (6th Cir. 1990) (internal citation and quotation marks omitted). Furthermore, in reviewing the district court's denial of a Rule 60(b) motion, we do not consider the merits of the underlying judgment. *See Hood v. Hood*, 59 F.3d 40, 42 (6th Cir. 1995). As such, Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof. *See Couch v. Travelers Ins. Co.*, 551 F.2d 958, 959 (5th Cir. 1977) (quoting 11 Wright & Miller, *Federal Practice and Procedure* § 2858).

### B.  The district court did not abuse its discretion in denying the Rule 60(b) motion

Rule 60(b) allows the trial court to relieve a party from a final judgment for the following reasons, among others: (1) mistake, inadvertence, surprise, or excusable neglect . . . or (6) any other reason justifying relief from the operation of the judgment. *See* Fed.R.Civ.P. 60(b). Under Rule 60(b), a party seeking relief from judgment must show the applicability of the rule. *See Lewis v. Alexander,* 987 F.2d 392, 396 (6th Cir. 1993) ("As a prerequisite to relief under Rule 60(b), a party must establish that the facts of its case are within one of the enumerated reasons contained in Rule 60(b) that warrant relief from judgment.").

Jinks and Green argue that Kirschmann's illness prevented them from filing his affidavit with the district court prior to its final ruling on summary judgment. Their motion, however, fails to provide any justification that would support such a

finding. From the onset of this lawsuit, Jinks and Green were aware of the "age-factor" statement allegedly made to Kirschmann by one of AlliedSignal's managers. Their initial complaint, dated November 12, 1998, lists this statement among the factual bases for their claim. Jinks also referred to the statement in his deposition taken on May 10, 1999.

Although Jinks and Green allege that the district court abused its discretion when it "refus[ed] even to hear an explanation of some defalcation," they failed to submit *any* supporting evidence or further details that would justify their failure to obtain Kirschmann's sworn affidavit prior to his unspecified illness. Their Rule 60(b) motion is silent as to the nature, length, and severity of Kirschmann's illness beyond the self-serving statement that Kirschmann "was unable to sign this affidavit . . . due to [his] recent illness for which [he] was under a doctor's care. [He] had already drafted and corrected the affidavit before [he] got sick." Despite their assertion that Kirschmann "cancelled more than one appointment to meet to sign his affidavit," they provide no evidence to substantiate this claim. For all of the above reasons, the district court did not err when it concluded that Jinks's and Green's failure to obtain Kirschmann's affidavit during the thirteen months between the filing of the complaint and the district court's final ruling did not merit relief from judgment.

Jinks and Green next argue that "substantial justice" requires that their Rule 60(b) motion be granted. In support of this argument, they rely heavily on the Supreme Court's decision in *Pioneer Investment Services Co. v. Brunswick Assocs.*, 507 U.S. 380 (1993). Although *Pioneer* interpreted "excusable neglect" in the context of Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, the Court analyzed the term as it is used in a variety of federal rules, including Rule 60(b)(1). *Id*. at 393-94. The Court determined that "neglect" must be given its ordinary meaning, which would include "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388. *Pioneer* then counsels that